## STATE *v.* MURDOCK

[No. 317, September Term, 1963.]

118

Decided May 29, 1964.

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Franklin Goldstein, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for the appellant.

*Thomas M. O'Malley,* with whom was *H. Edward Chozick,* on the brief for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The State has appealed from an order of the Circuit Court for Prince George's County, which dismissed an indictment against the appellee on the ground that he had been denied a speedy trial.

The only question posed for our determination is whether, upon the facts presented, the indictment was properly dismissed.

On June 20, 1962, an indictment containing six counts was returned by the Grand Jury, charging appellee and another defendant with conspiracy in connection with the operation of Free State Savings and Loan Association, Inc. On July 20, 1962, appellee acknowledged receipt of a copy of the indictment,

was advised of his right to counsel (Thomas M. O'Malley, Esq., entered his appearance for appellee), was arraigned and pleaded not guilty, and elected a jury trial. Bond was set at $2,000, and he was released on bail.

Ten days thereafter, appellee filed three motions: one for a bill of particulars; one for discovery and inspection; and one which requested the "court to grant the defendant herein an immediate trial," based on "Maryland Rules of Procedure, 1961 Edition, Rule 709." On August 14, 1962, within the time prescribed by our Rules, the State filed exceptions to all three of the motions, and on October 29, 1962, a hearing was held before Judge Parker on the motions and exceptions. The first two motions were granted by the court, and then consideration was given to the one for "an immediate trial."

At this point, it should be noted that Maryland Rule 709 was not designed as a substitute for one's constitutional right to a speedy trial under Article 21 of our Bill of Rights. It (with other Rules) was designed to take the place of former Section 592 of Article 27 of the Code (1957), now repealed. It provides that an accused may file a petition stating that he desires to waive his right *to action by the Grand Jury,* and he seeks an immediate trial. (The Rule also grants the right to request an immediate trial by persons praying a jury trial before, or appealing from convictions by, trial magistrates. This, of course, has no application here.) Upon the filing of such a petition, the State's Attorney is required to file an *information* against the accused, except in cases tried upon warrants, and thereafter an accused who has "filed a petition under this Rule shall be tried, without regard to term of court,[1] within such reasonable time as to accord him a speedy trial." As pointed out by Judge Henderson, for the Court, in *Heath v. State,* 198 Md. 455, the stat-

1. Prior to the enactment of former Section 592, it was the general practice in this State to try appeals from magistrates at the next jury term of the Circuit Courts as well as cases where jury trials were requested; and in cases where the State's Attorneys were required, or desired, to indict, it was necessary (except upon recall of the Grand Jury) to await the next jury term of court for indictment. This, not infrequently, resulted in considerable delay in trials, and, on occasions, caused hardship to persons accused of crime, especially those who were unable to furnish bail.

ute (now replaced by the Rules) was enacted for the benefit of accused persons, who had not been indicted, or who had prayed jury trials before, or appealed from the decisions of, trial magistrates, affording them the right, if they desired the same, to more expeditious trials. However, in the case at bar, the accused had already been indicted (a fact apparently overlooked by counsel when the motion was filed), so the Rule does not apply. The above, perhaps, is a complete answer to appellee's claim of denial of a speedy trial, for the motion is the only action taken, or indication, by him that he desired an early trial, and he concedes that in the absence of "a demand or request [for a speedy trial] he is construed to have waived his rights under the Declaration of Rights, Article 21." See *Harris v. State,* 194 Md. 288; *Kirby v. State,* 222 Md. 421; *Swift v. State,* 224 Md. 300; and annotations in 129 A.L.R. 572, at page 587, and 57 A.L.R. 2d 302, at page 326, *et seq.* However, we shall consider his claim from a constitutional viewpoint, as distinguished from a statutory or Rule of Court one (a number of States have statutes, supplementing constitutional provisions, relating to speedy trials), for Article 21 is self executing. *Harris v. State, supra.*

It will be noted that appellee moved for an *immediate* trial, and this motion was filed simultaneously with one for a bill of particulars, and one for discovery and inspection. At the hearing on the motions, the court granted the latter two, and informed appellee's counsel that appellee was entitled to a speedy trial, and, upon consideration of the motion for immediate trial, the court asked appellee's counsel, "you can't get a trial until you get that [the bill of particulars], can you?" To which counsel replied, "No, sir." Then upon request of the State's Attorney, which was not consented to, nor objected to, by appellee's attorney, the court granted the State forty-five days within which to comply with the two motions granted, as the appellee was out on bond and the State's Attorney had a Grand Jury convening shortly thereafter. After granting the forty-five days, the court inquired, "Does that conclude the matter?" Appellee's counsel replied, "Yes, Your Honor. Thank you very much." The appellee now contends that his "motion for an immediate trial was neither granted nor denied formally." Just what he

means by the word "formally" is not perfectly clear, but we think that what has been stated above makes it clear that his motion for "an immediate" trial was denied, and we shall point out below that thereafter, down to the date of his motion to dismiss the indictment, the appellee, by words, letters, pleadings, or actions, gave no indication to the court or the State's Attorney that he desired his trial to take place (and, of course, his motion to dismiss was not a motion to be tried, but was that he be not tried at all).

The State filed its answers on December 13, 1962, to the two motions that were granted, so we start from that date, for the cases are legion which hold that an accused cannot complain of a delay caused by himself. *Harris v. State, supra;* cases cited in Annotations in 129 A.L.R. at page 577 and 57 A.L.R. 2d 314. The appellee knew, and acknowledged in his reply to the judge quoted above, that an "immediate" trial was impossible on (or shortly after) October 29th, because of his other motions. After the State's answers were filed, appellee, as we stated above, gave no one any further indication that he desired an early trial, until he filed his motion to dismiss, some eight months thereafter.

The right to a speedy trial guaranteed by the State and Federal Constitutions, even when it is properly demanded, is necessarily relative. Delays, depending upon circumstances, sometimes cannot be avoided. It secures rights to an accused, but it does preclude the rights of public justice. *Beavers v. Haubert,* 198 U. S. 77. (In the case at bar, the trial court's opinion says that the "State asserts that the case is unusually complicated and a representative from the Attorney General's office who is to assist in the trial has not been available." Also, at argument, it was stated that there had been a change in State's Attorneys between October, 1962, and August of 1963.) And, even where a defendant has made a proper demand for trial or has moved for his discharge or dismissal of the proceedings against him, this does not necessarily prevent a ruling that because of subsequent conduct he waived his right to a speedy trial. Annotation, 57 A.L.R. 2d 342. Of course, the delay in completing a prosecution must not be purposeful or oppressive. *Pollard v. United States,* 352 U. S. 354. The appellee here

steered a course of inaction by which it was difficult for him to worsen his position. He knew an "immediate" trial could not be had until the State filed its answers to his other two motions. He received the answers, was free on bond, and was represented by able, experienced counsel. When the trial date would arrive in due course, he would be properly prepared. But by not pressing for trial (Judge Parker had already told appellee that he was entitled to a speedy trial, and there can be no doubt that he could have had a trial for the asking by a simple request, orally or in writing, to any one of the judges in Prince George's County) his defense would suffer no harm, and, if the prosecution did not actively seek to have the trial set, he could argue, as he did, that he was denied a speedy trial, based upon his denied motion for an immediate trial.

Without unduly prolonging this opinion, we think our conclusion herein is controlled by two previous decisions: *United States v. Patrisso*, 21 F.R.D. 363 (S.D. N.Y., 1958), and our case of *Harris v. State, supra*. In *Patrisso*, the defendants were indicted in July of 1954. In March of 1957, they moved to dismiss for failure of the Government to prosecute. The motion was denied, and the case was marked "ready and passed," which meant that the case was ready for trial as soon as a judge was available. Nine months elapsed without the Government or the defense making any effort to have the case assigned to a judge. The defendants then filed another motion to dismiss in January of 1958, alleging they had been prejudiced by a corporation's having been dissolved, another corporation's records were no longer available, the scattering of witnesses, etc. The Court pointed out that the defendants had indicated they desired a prompt trial by filing their first motion, but, during the nine months that had transpired since then, they had taken no action to have the case assigned for trial. The Court stated that the second "motion seems more to evidence defendants' desire to avoid the criminal charges against them rather than to secure a speedy trial of those charges," and that defendants' affidavits did not persuade the Court that the Government had deliberately or oppressively sought delay, or that "new and substantial" prejudice had been effected by the delay. The motion to dismiss was denied.

In *State v. McTague,* 216 N. W. 787 (Minn.), which was cited with approval, and quoted from, in *Harris v. State, supra,* the Court said:

"The constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' (no reference to counsel in this case) while the defendant and his counsel rest in silence. We hold that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. They are a shield, and, as said in State v. Rowley, 198 Iowa, 613, * * *, they 'must not be left hanging on the wall of the armory.' *There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal.* The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this, he must be held, in law, to have waived the privilege. Until he has so acted, the state is not called upon to establish the existence of the statutory 'good cause.' State v. Artz, 154 Minn. 290, 191 N. W. 605; State v. Dinger, 51 N. D. 98, 199 N. W. 196 and cases cited; 44 L.R.A. (N. S.) 871, note. Upon the record, defendant was not entitled to the relief sought." (Emphasis added.)

124

We find nothing in the record to establish that the delay was "purposeful" on the part of the State, or that it was "oppressive" to the accused. And we are not persuaded by appellee's affidavit, the only one filed by him in support of his motion to dismiss, that he has suffered any substantial prejudice by the delay.

We have examined such cases as *Williams v. United States,* 250 F. 2d 19, *Taylor v. United States,* 238 F. 2d 259, *United States v. Gunther,* 259 F. 2d 173, *United States v. McWilliams,* 163 F. 2d 695 (all D.C. Cir.), *Petition of Provoo,* 17 F. F.R.D. 183 (D.C., Md., 1955), and *United States v. Chase,* 135 F. Supp. 230 (N.D. Ill.), wherein indictments were dismissed on the ground of a denial to the accused of a speedy trial. In all of these cases, the accused was incarcerated for all, or a large portion, of the time of delay; in some, the Courts specifically found a purposeful delay by the prosecution to harass the accused; and in most of them, the periods of delay far exceeded that in the case at bar.

We hold that the appellee's course of inaction after the denial of his motion for an "immediate" trial (his failure to "demand a trial, * * *, or take some action indicating to the court that he [believed he was] being deprived of his * * * constitutional rights as a foundation for his application for a dismissal") was such as to constitute a waiver of his right to a speedy trial. Upon remand, he, of course, will be entitled to a prompt and speedy trial, if he requests one.

> *Order dismissing the indictment reversed, and case remanded for further proceedings; appellee to pay the costs.*