# CLYDE E. BRADY *v.* STATE OF MARYLAND

[No. 844, September Term, 1976.]

*Decided June 7, 1977.*

The cause was argued and reargued before THOMPSON, MOORE and MELVIN, JJ.

Argued and reargued by *James K. Carmody, Assigned Public Defender,* for appellant.

Argued and reargued by *Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch,*

Attorney General; Warren B. Duckett, Jr., State's Attorney for Anne Arundel County, and Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County, on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This is an appeal by Clyde E. Brady, appellant, from an order of the Circuit Court for Anne Arundel County dated May 27, 1976, denying a motion to dismiss certain indictments. In that motion and on this appeal appellant alleges he was denied his constitutional rights to a speedy trial and due process of the law. The appeal was filed prior to the trial. After argument before this Court on the merits the case was reargued on the question of appealability.

The record in this case, unlike the record in most such cases, shows that the facts were fully developed in a hearing before the trial judge. We wish to publicly commend counsel for their diligence and call upon other defense counsels and State's Attorneys to follow their splendid example.

Appellant was arrested on November 10, 1973, for the murder of John E. Owens. He was indicted on December 11, 1973, and his counsel entered his appearance on December 28, 1973. Trial was scheduled for July 16, 1974, but appellant's trial counsel requested a postponement. Trial was rescheduled for September 19, 1974, but the prosecuting attorney was subpoenaed as a witness in an unrelated trial for that date and the case was reset for trial October 2, 1974. When the case was called for trial the State entered a nolle prosequi on the indictments against the appellant. At that time, the appellant demanded an immediate trial and asked to be released. He was denied release because there was a pending charge of violation of probation. When bond was requested on the probation charge, the State opposed bond on the basis that the appellant was a potential danger to the community, particularly to members of the Owens family; he probably would not return for trial because he was aware that a co-defendant might testify against him; and that it might be dangerous to the appellant to be released because

there was a strong feeling in the community against him. Despite the State's arguments, the appellant was later released in December of 1974.

On April 1, 1975, the appellant was rearrested for his alleged involvement in the murder of John E. Owens. He was indicted on June 9, 1975 as an accessory after the fact, and on September 8, 1975, as the murderer of John E. Owens. Trial was scheduled on both indictments for November 18, 1975, but was postponed by appellant's trial counsel. Appellant concedes in his brief:

"Since September 11, 1975 the State has often sought to set a trial date but appellant's counsel asked that trial dates be deferred, pending the outcome of his Motion to Dismiss [now under consideration] which was filed on January 14, 1976."

Ronald M. Naditch, the Assistant State's Attorney who was handling the prosecution of the appellant, testified that he wanted to try Alfred R. Howard, a co-defendant, first, in order to get Howard to testify against the appellant. He did not believe he could successfully prosecute the appellant without Howard's testimony. Naditch caused the appellant to be arrested on April 1, 1975, because he believed that Howard would testify against him as a result of a plea bargain. He expected Howard to make a statement incriminating the appellant, however, appellant was indicted only as an accessory after the fact because Howard's statement did not inculpate the appellant in the actual murder. On September 4, 1975, Naditch interviewed a prisoner named David Henkensiefken about an unrelated case, and Henkensiefken gave Naditch a statement that was inculpatory to the appellant in the present case. Prior to the interview, Naditch did not know Henkensiefken. Naditch presented Henkensiefken's statement and other evidence to the grand jury, which returned the second murder indictment.

Alfred R. Howard was arrested on November 16, 1973, for the murder of John E. Owens. Trial was scheduled for

February 20, 1974, but postponed by consent of the State and Howard. Trial was rescheduled for August 28, 1974, by consent of the State and Howard, but postponed at the request of Howard. On August 20, 1974, the State requested a trial date of August 27, 1974, but Howard's trial counsel advised that that date was not convenient, and that he required additional time to prepare for trial. A trial date of November 19, 1974, was set as a result of the efforts of the State. Howard had the case removed, and trial began on April 1, 1975. During the trial, a plea bargain was made wherein Howard agreed to testify against the appellant.

## *Appealability*

This Court in *Neal v. State*, 20 Md. App. 20, 314 A. 2d 710 (1974), held that we would no longer follow the rule that there could be an immediate appeal from a pretrial order denying a motion presenting the questions of double jeopardy or the failure to grant a speedy trial. We said:

"We believe that the time has come for us to reconsider the position we have taken on the basis of *Jones* [241 Md. 599, 217 A. 2d 367 (1966)] and *Harris* [194 Md. 288, 71 A. 2d 36 (1950)]. On only one of the 25 occasions when the claim was before the Court of Appeals and resolved in a reported opinion did it hold the right to a speedy trial had been unconstitutionally denied, and that one case was *Jones*. At the time we decided *State v. Lawless*, 13 Md. App. 220, on 21 October 1971, we had dealt with the question in 59 reported opinions, including *Lawless*. On only two occasions did we hold that the right to a speedy trial was unconstitutionally denied, *Wilson v. State*, 8 Md. App. 299, and *Caesar v. State*, 10 Md. App. 40. See note 4, 13 Md. App. at 226. Since *Lawless*, we have considered a claim of the denial of a speedy trial in 19 reported opinions, in none of which did we find that the constitutional right was violated. Since the inception of our Court we have had the question of double jeopardy before

us in some 18 reported cases. In only two, *State v. Campbell*, 7 Md. App. 538, and *Jones v. State*, 17 Md. App. 504, did we find that another trial would put the accused twice in jeopardy.[9] The piece-meal appellate review of immediate, and, with very few exceptions, patently frivolous appeals from a refusal to dismiss an indictment on an allegation of denial of a speedy trial or of double jeopardy does just what the Court in *Lee* [161 Md. 430, 157 A. 723 (1931)] anticipated. '[P]roceedings in every criminal case, great or small, may be stopped and delayed while the accused prosecutes an appeal * * * [adding] just so much to the resources of those who might find vexatious delays advantageous, and [multiplying] appeals in criminal cases * * *.' *Lee*, at 434. We believe that it is now more beneficial to the proper administration of criminal justice and of little detriment in the circumstances to the vast majority of those accused of crime, that we follow the rulings of *Lee* and *Pearlman* [226 Md. 67, 172 A. 2d 395 (1961)] rather than the apparent exceptions of *Jones* and *Harris*.

---

"9. Approximately one-quarter of the opinions of the Court of Special Appeals are reported. Claims of violation of the right to a speedy trial or the guarantee against double jeopardy have been presented to us in cases many more times than is reflected in the reported opinions and have been disposed of in unreported per curiam opinions as not of 'substantial interest as a precedent,' pursuant to the mandate of Rule 1092 b. In all likelihood, had we found in any of those cases that the right to a speedy trial had been denied or the guarantee against being twice put in jeopardy had been violated, the opinion would have been published." *Id.* at 28, 29.

The Court of Appeals granted certiorari and reversed that part of our decision pertaining to double jeopardy. *Neal v. State*, 272 Md. 323, 322 A. 2d 887 (1974). In *Taylor v. State*, 22 Md. App. 370, 323 A. 2d 648 (1974), we examined the holding in *Neal v. State, supra* 272 Md. 323, and concluded:

"The express message of the Court of Appeals in *Neal* is unmistakable. A denial of a motion to

dismiss an indictment on the ground of double jeopardy is appealable immediately. The underlying message of *Neal* is equally unmistakable, i.e., our decision in *Neal v. State* with respect to the holding that a denial of a motion to dismiss for lack of speedy trial is interlocutory and thus not immediately appealable is still viable." *Id.* at 372.

The Court of Appeals first recognized the right of an immediate appeal in speedy trial cases in *Harris v. State, supra.* In 1950, when *Harris* was decided, criminal appeals in Maryland were a rarity, whereas now they are routine, and as pointed out in detail in *Neal v. State, supra* 20 Md. App. 20, questions concerning speedy trials arise in many of them. The rule allowing an immediate appeal in such cases is burdensome because in most cases it means that there will be two appeals instead of one. As we pointed out in *Taylor v. State, supra* and *Neal v. State, supra* 20 Md. App. 20, the delay involved in the appeal frequently serves as a weapon in the hands of an accused. In addition to the time that is required to process the appeal in this Court, such a hypothetical accused could, and frequently does, petition the Court of Appeals for certiorari. After that Court has acted upon the petition, the accused still has ninety days in which to petition the Supreme Court of the United States for a writ of certiorari, all of which will further delay the trial.

As early as *Harris v. State,* 6 Md. App. 7, 249 A. 2d 723 (1969), this Court pointed out under Maryland Rule 725 a, the trial judge could withhold ruling on such a motion, for determination at the trial of the general issue. Under new Maryland Rule 736 e which becomes effective July 1, 1977, a motion to dismiss an indictment for denial of a speedy trial can be disposed of at the trial on the merits. Many times there are good reasons to postpone decision on such a motion until the trial, especially where the issue of prejudice to the accused is raised. It would seem that if a trial judge, after proper hearing before trial, felt that the motion should be

granted, he would rule on it immediately. If he had doubts concerning prejudice, or for any other reason felt that the motion should be denied, he would quite properly withhold decision thereon until after the trial. As we said in *Taylor v. State, supra* at 374, the right to immediate appeal should not be dependent upon whether or not the trial judge withholds his decision.

In *Smith v. State*, 11 Md. App. 631, 276 A. 2d 228 (1971), we held that there could be an immediate appeal in cases involving preindictment delay, i.e., denial of due process. This question is so intertwined with speedy trial problems that we depart therefrom for the same reasons stated above and expressly overrule *Smith v. State, supra*, as well as similar expressions in other cases. *See State v. Lawless, supra* at 225, n.2. We summarily, and without opinion, applied our new speedy trial rule to a case involving preindictment delay in *O'Dell v. State*, No. 235, September Term, 1976, filed May 14, 1976, *cert. denied*, Md., Petition Docket No. 151, September Term, 1976, filed July 14, 1976.

Appellant's counsel concedes that the setting of a precedent is important but he argues that the appellant's rights are important to him and that he has chosen to appeal even though he is incarcerated pending the disposition of the case. In view of this, we will express our thoughts on the issues by way of dicta. *Eastgate Associates v. Apper*, 276 Md. 698, 704, 350 A. 2d 661 (1976).

### Due Process of Law

The appellant contends that when the State entered a *nolle prosequi* on October 2, 1974, over his objection, and later indicted him for the same offense, he was denied due process of the law. This contention is two-fold. First, it is alleged that the Maryland law as it concerns the State's right to enter a *nolle prosequi* amounts to a *per se* denial of due process. Second, even if the Maryland law does not amount to a *per se* denial of due process, the use of this tool by the State in this case was "unreasonable, oppressive and capricious." We do not agree.

Maryland Rule 711 stated that "[a] *nolle prosequi* of an indictment may be entered by the State's Attorney only in open court." The entry of a *nolle prosequi* under this rule is a matter "within the exclusive province and discretion of the State's Attorney." *State v. Hunter,* 10 Md. App. 300, 304, 270 A. 2d 343 (1970). It has been well established that the State may enter a *nolle prosequi* to an indictment at any time before jeopardy attaches and that the defendant may be reindicted for the same offense. *Irvin v. State,* 276 Md. 168, 172, 344 A. 2d 418 (1975). There is no question that jeopardy had not attached in this case. *See Blondes v. State,* 273 Md. 435, 330 A. 2d 169 (1975). Appellant goes to great lengths to show that the effect of this rule is to allow the prosecution to postpone a case without being required to show reasonable need, while the defendant is required to show extraordinary cause in order to obtain a postponement. *Md. Code,* Art. 27, § 591. Md. Rule 740. He contends that the granting to the State of this weapon, not in the arsenal of the defendant, is a denial of due process. Appellant's argument would have merit if the entry of a *nolle prosequi* left the accused under the cloud of public accusation and delayed his opportunity to prove his innocence. Its effect, however, is that the accused no longer remains under the imputation of guilt. The abandonment of the prosecution cancels that indictment and restores him to his original position. *Barrett v. State,* 155 Md. 636, 638, 142 A. 96 (1928). In this manner it differs entirely from a postponement. An accused has no right to be tried on a particular indictment. *Greathouse v. State,* 5 Md. App. 675, 685, 249 A. 2d 207 (1969).

Although an accused cannot force the State to try him on the particular indictment, if the delay in bringing the second indictment was "unreasonable, oppressive and capricious" such delay may constitute a denial of due process of law. *Greathouse v. State, supra* at 687. It is certainly not "unreasonable" for the State to *nolle prosequi* a case when it did not have sufficient evidence to support a conviction. At a later date when it is determined that it did have sufficient evidence to support the conviction, it was its duty to try to obtain a conviction. The State diligently attempted to make

a competent case, and it obtained the second indictment within a reasonable time after it felt it had sufficient evidence.

For the delay to be "oppressive" the record must show prejudice. In *United States v. Marion,* 404 U. S. 307, 324, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court clearly spelled out that preindictment delay will not violate the due process clause of Amendment 5 of the Constitution of the United States absent actual prejudice to the defense. Appellant, in his brief, concedes that the delay had not prejudiced the defense of his case, in terms of securing evidence or finding witnesses, but he contends that his case has been weakened because the delay has strengthened the State's case. Constitutional safeguards are designed to allow an accused every opportunity to present his defense and to prevent the State from gaining an unfair advantage. They are not designed to prohibit the State from lawfully gathering evidence. *Barker v. Wingo,* 407 U. S. 514, 534, 92 S. Ct. 2182, 2194, 33 L.Ed.2d 101 (1972), held a delay for the purpose of trying a co-defendant in order to secure his testimony against the appellant is not itself oppressive. *See also United States v. Fairchild,* 526 F. 2d 185 (7th Cir. 1975), *cert. denied,* 96 S. Ct. 1682 (1976).

The actions of the State could not be considered "capricious" for it is clear that there was a steady intent and purpose, not adverse to the fair administration of justice, to bring the appellant to trial if there was sufficient evidence against him. After the State entered the *nolle prosequi,* it continued to recommend that the appellant be held without bond or on a very high bond for a violation of probation. While it produced other arguments, it appears that the principal motivation behind this argument was the desire to keep the appellant in the jurisdiction until such time as there might be sufficient evidence to bring a second indictment. The fear that the appellant was possibly considering removing himself from this jurisdiction was founded on a statement by defense counsel that appellant had expressed this desire. There is no question that appellant violated his probation whether the violation was

simply technical or more substantial. In setting bond until the probation hearing, the trial judge had to consider an amount sufficient to insure the appellant's attendance at the hearing. At that hearing it was the duty of the State to bring to the attention of the trial court every fact that would have any bearing on the appellant's appearance for the probation violation. His alleged involvement in the Owens murder was obviously a factor for the judge to consider in fixing bond. We find that the record does not support the contention that the appellant was denied due process, and would so hold if the question were before us.

## Speedy Trial

### Length of the Delay

Appellant argues that in considering the length of the delay we should consider all of the time that has passed since the original indictment. We disagree. In *Ward v. State*, 30 Md. App. 113, 351 A. 2d 452 (1976), we held that the time which elapsed after an accused was arrested counted only until the time he was released after a preliminary hearing. Although that case involved dismissal at a preliminary hearing instead of the *nolle prosequi* of an indictment, we think it is controlling particularly in view of the similarity of facts, in that the State was waiting to secure the testimony of a co-conspirator in order to secure sufficient evidence to support its charge. *See Greathouse v. State, supra* at 686.

In considering the length of the delay, we will therefore look at the time between the original arrest, November 10, 1973, and the entry of the nolle prosequi, October 2, 1974, and April 1, 1975, the date of the rearrest, until September 11, 1975, a period in excess of 16 months. The appellant concedes that after September 11, 1975, the State did everything possible to get the case tried. This period of 16 months is sufficiently long under the circumstances of this case to require the balancing process set forth in *Barker v. Wingo, supra; Jones v. State*, 279 Md. 1, 367 A. 2d 1 (1976); and *State v. Wilson*, 35 Md. App. 111, 371 A. 2d 140. The

factors to be considered in addition to the length of the delay are the following: (1) prejudice to the defendant; (2) the defendant's demand for a speedy trial; and (3) the reasons for the delay.

## Prejudice

Appellant concedes that his defense was not in any way weakened by the delay. He argues that because the State's case was improved by the delay, he was prejudiced. We do not consider, under the cases heretofore cited under our discussion of due process, that the appellant's argument has any merit. It is not the same thing to say that an improvement in the State's case results in automatic prejudice to the defendant's case, although it is easy to see how such a superficial argument can be made.

The appellant introduced testimony to show that while incarcerated for the period of more than nineteen months, he developed a skin rash and underwent the usual prejudice to his person that most persons incarcerated for such a period would undergo. In other words, we consider this incarceration prejudice to the appellant in the same manner we would consider such a period of imprisonment prejudicial to any other individual.

## Demand for a Speedy Trial

It appears that the appellant never made a demand for a speedy trial. It is true that after the State filed the *nolle prosequi* in October, 1974, the appellant then insisted upon immediate trial, but at that time there was nothing to be tried. *Greathouse v. State, supra* at 686. We note that after he was reindicted and the defense felt the State was in possession of adequate testimony to secure a conviction, there was no demand for a speedy trial — only a motion to dismiss filed in January of 1976. In considering this objection, we will consider particularly the language of *Barker v. Wingo*, 407 U. S. at 528-529:

"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives

his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. *It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.*" (footnote omitted) (emphasis added).

We consider the demand after the State had entered a *nolle prosequi* on the original indictments to be a "purely *pro forma* objection" and therefore, entitled to little weight in the balancing process in which we are now engaged.

### Reasons for the Delay

For the initial period of eleven months from November 10, 1973 until October 2, 1974, appellant makes no assertion that this period should be "charged to the State." He concedes that there was no delay "other than normal for that period." He continues to say that "discovery and other preparation were proceeding with orderly expedition." We find that the second period from April 1, 1975 until September 11, 1975, must be weighed against the State, although some of this time must be allowed for "orderly procedure." *Epps v. State,* 276 Md. 96, 110, 345 A. 2d 62 (1975). The record does not indicate any "deliberate attempt to hamper the defense" as

would be weighed heavily against the State. *See Jones v. State, supra.* The period after September 12, 1975 would be weighed against the appellant, but we do not consider it as appellant states in his brief, "All delays from that time are admittedly at the insistance of appellant for the purpose of preparing and filing his motion to dismiss."

### Conclusion

Under the four-factor analysis we have (1) a 16 month delay; (2) only five months of which are attributable to the State; (3) no actual prejudice to the appellant in excess of that incurred by any other person so incarcerated; and (4) no valid demand for a speedy trial. After weighing these four factors we would hold, if the question were before us, that there has been no denial of appellant's right to a speedy trial.

*Appeal dismissed.*
*Appellant to pay the costs.*