# GREGORY VICTOR STEWART *v.* STATE OF MARYLAND

[No. 78, September Term, 1977.]

*Decided May 22, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This case presents the issue whether a defendant in a criminal prosecution by the State of Maryland may appeal, *before* trial, a circuit court's order denying his motion to dismiss the indictment because of an alleged violation of his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States [1] and by Article 21

---

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend. VI. Klopfer v. North Carolina, 386 U. S. 213, 222-226, 87 S. Ct. 988 (1967) determined that the clause applies to the states through the Fourteenth Amendment.

of the Declaration of Rights of the Constitution of Maryland.[2] We hold that he may not.

## I

Gregory Victor Stewart was charged under an indictment filed in the Circuit Court for Prince George's County with armed robbery and nine related offenses. Trial was scheduled for 4 May 1977. On 3 May he filed a motion to dismiss the indictment, alleging that he had been denied a speedy trial. When the case came on for trial the next day, the court determined the motion as a preliminary matter. Upon a plenary hearing, the motion was denied. Stewart submitted to the court forthwith an order "for an immediate appeal from the court's denial" to the Court of Special Appeals. When the appeal reached the intermediate appellate court, we granted a writ of certiorari before decision by it. The appeal was heard by us on 6 January 1978.

## II

By order of 20 June 1977, 432 U. S. 905, 97 S. Ct. 2948, the Supreme Court of the United States granted certiorari in *United States v. MacDonald,* which had been decided on 23 January 1976 by the United States Court of Appeals, Fourth Circuit, and reported in 531 F. 2d 196. The case was argued before the Supreme Court on 9 January 1978, and we thought that it was advisable to await the decision before determining the appeal before us because of the apparent similarity of the issues. The case was decided on 1 May 1978 by a unanimous court. *United States v. MacDonald,* 435 U. S. 850, 98 S. Ct. 1547 (1978).

On 24 January 1975 the grand jury of the United States District Court for the Eastern District of North Carolina indicted Jeffrey R. MacDonald on three counts of first-degree murder. Among a number of pretrial motions submitted by MacDonald which were denied by the District Court were a

---

**2.** The "People of the State of Maryland" declared in Article 21 of the Declaration of Rights of the Constitution of Maryland "That in all criminal prosecutions, every man hath a right . . . to a speedy trial. . . ."

motion to dismiss the indictment because of the denial of his Sixth Amendment right to a speedy trial and another to dismiss on double jeopardy grounds. The United States Court of Appeals for the Fourth Circuit stayed the trial and allowed an interlocutory appeal. By a divided vote, it reversed the District Court's denial of the motion to dismiss on speedy trial grounds and remanded the case with instructions to dismiss the indictment. *United States v. MacDonald,* 531 F. 2d 196 (4th Cir. 1976). The Court of Appeals panel majority recognized that the denial of a pretrial motion in a criminal case generally is not appealable, but it assumed jurisdiction on two grounds: (1) the speedy trial claim was pendent to the double jeopardy claim, the denial of which it had held to be appealable before trial in *United States v. Lansdown,* 460 F. 2d 164 (4th Cir. 1972); (2) alternatively, although conceding that "[n]ot every speedy trial claim . . . merits an interlocutory appeal," and that "[g]enerally this defense should be reviewed after final judgment," the court stated that it was "the extraordinary nature of MacDonald's case that persuaded us to allow an interlocutory appeal." 531 F. 2d at 199. On the merits, the majority concluded that MacDonald had been deprived of his Sixth Amendment right to a speedy trial. The Supreme Court granted certiorari because of the importance of the jurisdictional question to the criminal law. 435 U. S. at 853. It reversed the judgment of the appellate court and remanded the case for further proceedings. *Id.* at 863.

### III

The Supreme Court found that *MacDonald* presented the issue "whether a defendant, *before* trial, may appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial." *Id.* at 850 (emphasis in original). The reason underlying the conclusion that he may not was, "[i]n sum," that the Court declined "to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain inter-

locutory appellate review." *Id.* at 863. The precise holding was that "the Court of Appeals lacked jurisdiction to entertain [MacDonald's] speedy trial appeal." *Id.* at 857. We look to see how the Court reached this holding.

Citing *Abney v. United States,* 431 U. S. 651, 97 S. Ct. 2034 (1977), *DiBella v. United States,* 369 U. S. 121, 82 S. Ct. 654 (1962), *Parr v. United States,* 351 U. S. 513, 76 S. Ct. 912 (1956) and *Cobbledick v. United States,* 309 U. S. 323, 60 S. Ct. 540 (1940), the Supreme Court in *MacDonald* pointed out that it had frequently considered the appealability of pretrial orders in criminal cases. 435 U. S. at 853. Interlocutory or "piecemeal" appeals are disfavored. The traditional and basic principle, embodied in 28 U.S.C. § 1291,[3] is that finality of judgment is required as a predicate for federal appellate jurisdiction. "The rule of finality has particular force in criminal prosecutions because 'encouragement of delay is fatal to the vindication of the criminal law.'" *Id.* at 853, 854, (quoting *Cobbledick,* 309 U. S. at 325). The Court in criminal cases has twice departed from the general prohibition against piecemeal appellate review, and in each instance relied on the final judgment rule's "collateral exception" articulated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U. S. 541, 545-547, 69 S. Ct. 1221 (1949). *Stack v. Boyle,* 342 U. S. 1, 12, 72 S. Ct. 1 (1951) determined that an order denying a motion to reduce bail could be reviewed before trial. *Abney, supra,* 431 U. S. at 659, held that there may be an interlocutory appeal of an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds. *MacDonald* gave the basis of the *Abney* holding:

> "In so holding, the Court emphasized the special features of a motion to dismiss based on double jeopardy. It pointed out, first, that such an order

---

3. 28 U.S.C. § 1291 reads:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."

constitutes 'a complete, formal and, in the trial court, a final rejection of a criminal defendant's double jeopardy claim. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee. Hence, *Cohen's* threshold requirement of a fully consummated decision is satisfied.' 431 U. S. at 659. Secondly, it noted that 'the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.,* whether or not the accused is guilty of the offense charged.' *Ibid.* Finally, and perhaps most importantly, 'the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.' *Id.,* at 660. . . ." 435 U. S. at 855, 856. [46 U.S.L.W. at 4396].

*MacDonald* then proceeded to apply the principles enunciated in those precedents to the case before it, finding their application "straightforward." [4] *Ibid.* Like the denial of a motion to dismiss an indictment on double jeopardy grounds, a pretrial order rejecting a defendant's speedy trial claim is not final in the sense of terminating the criminal proceedings in the trial court. Therefore, if it may be appealed before trial, it is because it satisfies the criteria identified in *Cohen* and *Abney* as sufficient to warrant suspension of the established rules against piecemeal review before final judgment. The Court believed it clear that the criteria were not satisfied. This is so because (1) the denial of a motion to dismiss on speedy

---

4. The Court found that United States v. Marion, 404 U. S. 307, 92 S. Ct. 455 (1971) on which the respondent, MacDonald, relied to demonstrate that a defendant has a right to appeal before trial the denial of a motion to dismiss an indictment on speedy trial grounds, was clearly distinguishable. In *Marion,* the trial court *granted* the motion to dismiss and the Government appealed. The appeal was authorized under 18 U.S.C. § 3731 (1964 ed., Supp. V). Neither that statute nor the statute succeeding it, 18 U.S.C. § 3731 (1976 ed.) had anything to do with a defendant's right to appeal the denial of a motion to dismiss an indictment on speedy trial grounds. United States v. MacDonald, 435 U. S. 850, 98 S. Ct. 1547 (1978).

trial grounds is not a fully consummated decision, and (2) it is not collateral to and separable from the principle issue at the impending criminal trial of the accused, *i.e.,* whether or not he is guilty of the offense charged. As to the first, most speedy trial claims are best considered only after the relevant facts have been developed on trial. Of the four factors listed in *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182 (1972), that are to be weighed in determining whether an accused has been deprived of his Sixth Amendment right to a speedy trial the most serious is prejudice to the defendant from the delay. *Barker* at 532.

> "Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial — when prejudice can be better gauged — would also be denied. Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily 'remains open, unfinished [and] inconclusive' until the trial court has pronounced judgment. *Cohen,* 337 U. S. at 546. . . ." *MacDonald,* 435 U. S. at 858, 859.

With respect to the second, "[t]here exists no such divorce between the question of prejudice to the conduct of the defense (which so often is central to an assessment of a speedy trial claim) and the events at trial. Quite the contrary, in the usual case, they are intertwined." *Ibid.* But, the Court continued, "[e]ven if the degree of prejudice could be accurately measured before trial, a speedy trial claim nonetheless would not be sufficiently independent of the outcome of the trial to warrant pretrial appellate review." *Ibid.* In any event, "[a] central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim

in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed." *Ibid.*

Moreover, the Court declared, the denial of a motion to dismiss on speedy trial grounds does not actually involve an important right which would be lost, probably irreparably, if review had to await final judgment. The Court went on to say that despite some superficial attraction in the argument that the right to a speedy trial — by analogy to the rights represented by the double jeopardy claim in *Abney,* the demand for reduced bail in *Stack,* and the posting of security at issue in *Cohen* — must be vindicated before trial in order to insure that no nonspeedy trial is ever held, the argument fails both doctrinally and pragmatically:

> "Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in *Barker v. Wingo, supra,* combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.
>
> "Furthermore, in most cases, as noted above, it is difficult to make the careful examination of the constituent elements of the speedy trial claim before trial. Appellate courts would be in no better position than trial courts to vindicate a right that had not yet been shown to have been infringed." 435 U. S. at 861.

The Court thought that the application of the principles articulated in *Cohen* and *Abney* to speedy trial claims was in itself dispositive, compelling the conclusion that such claims are not appealable before trial. *Id.* It reinforced its conclu-

sion, however, "by the important policy considerations that underlie both the Speedy Trial Clause and 28 U.S.C. § 1291." *Ibid.* One of the principal reasons for strict adherence to the doctrine of finality in criminal cases is the speedy trial guarantee. *Di Bella,* 369 U. S. at 126. "Fulfillment of this guarantee would be impossible if every pre-trial order were appealable." *MacDonald,* 435 U.S. at 861. The Court discussed the policy consideration:

> "Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal. The right to a speedy trial, however, 'is generically different from any of the other rights enshrined in the Constitution for the protection of the accused' because 'there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interest of the accused.' *Barker v. Wingo,* 407 U. S. at 519. See also *United States v. Avalos,* 541 F. 2d 1100, 1110 (CA5 1976), cert. denied, 430 U. S. 970 (1977). Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes. *Dickey v. Florida,* 398 U. S. 30, 42 (1970) (Brennan, J., concurring).

> "Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause. And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal." *Ibid.*

The Court advanced one final argument why, as a matter of policy, pretrial appeals on speedy trial grounds should be disallowed.

> "As the Court previously has observed, there is nothing about the circumstances that will support a

speedy trial claim which inherently limits the availability of the claim. See *Barker v. Wingo,* 407 U. S. at 521-522, 530. Unlike a double jeopardy claim, which requires at least a colorable showing that the defendant once before has been in jeopardy of federal conviction on the same or a related offense, in every case there will be some period between arrest or indictment and trial during which time 'every defendant will either be incarcerated . . . or on bail subject to substantial restrictions on his liberty.' *Id.,* at 537 (White, J. concurring). Thus, any defendant can make a pretrial motion for dismissal on speedy trial grounds and, if § 1291 is not honored, could immediately appeal its denial." *Ibid. See* footnote 3, *supra.*

## IV

Maryland also disfavors interlocutory or "piecemeal" appeals, and has enacted a law (comparable to the federal statute) which has been construed to mean that a defendant in a criminal proceeding may appeal only from a final judgment. Maryland Code (1974) § 12-301 of the Courts and Judicial Proceedings Article; [5] *Neal v. State,* 272 Md. 323, 324, 322 A. 2d 887 (1974); *Lee v. State,* 161 Md. 430, 434, 157 A. 723 (1931). However, we have applied a well-recognized corollary to the rule of finality of judgment as a predicate to appellate jurisdiction. This corollary permits an appeal from a seemingly interlocutory order which denies an absolute constitutional right. *Neal* at 325. The corollary, in turn, is qualified by the principle that an appeal will not lie from an

---

5. Code (1974) § 12-301 of the Courts and Judicial Proceedings Article provides, *inter alia,* with exceptions not here relevant, that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Section 12-101 defines "final judgment" to mean "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." The Revisor's note explains that "[t]his definition does not attempt to specify what is an appealable final order. That is left to case law, as at present." The reasons for the statutory provision, which are in line with the policy considerations for finality of judgment noted in United States v. MacDonald, 435 U. S. 850, 98 S. Ct. 1547 (1978), are set out in Lee v. State, 161 Md. 430, 434, 157 A. 723 (1931).

apparently interlocutory order, even though it denies a constitutional right, if the order is based upon the rightful exercise of a trial court's discretion. *Pearlman v. State,* 226 Md. 67, 71, 172 A. 2d 395 (1961).

In *Harris v. State,* 194 Md. 288, 71 A. 2d 36 (1950), we applied the corollary to the rule and entertained an immediate appeal from the refusal of a trial court to quash an indictment on speedy trial grounds. We stated:

> "While it is perfectly true that an appeal will not lie from a judgment that is not final . . . and ordinarily denial of a 'motion to quash' is not a final judgment, on the other hand it is just as true that when a prisoner claims that he has been denied a speedy trial and has thereby become entitled to be freed of further proceedings in a case, and his claim is decided against him, this is a final ruling denying his claimed right, from which an appeal will lie." [6] *Id.* at 294.

In *Jones v. State,* 241 Md. 599, 217 A. 2d 367 (1966), the defendant filed a motion to dismiss the indictments against him, claiming that he had been denied his constitutional right to a speedy trial. The trial court denied the motion, the defendant appealed, and the State moved to dismiss the appeal, alleging that as no final judgment had been entered in the trial court, the appeal was premature. We disposed of the State's motion based on the *Harris* holding: "Following the previous holding of this Court in *Harris v. State,* 194 Md. 288, the motion will be overruled." *Jones* at 601.

Until 1974, decisions of the Court of Special Appeals consistently followed the holdings of *Harris* and *Jones.* In a number of cases, under the corollary to the rule prohibiting appeals from interlocutory orders, it entertained, before trial on the merits, an appeal from an order denying a defendant's motion to dismiss an indictment grounds on a violation of his right to a speedy trial or his right not to be placed twice in

---

6. A motion to dismiss has supplanted the former motion to quash. *See* former Maryland Rule 725 a, present Maryland Rule 736.

jeopardy.[7] On 11 February 1974, the Court of Special Appeals decided *Neal v. State*, 20 Md. App. 20, 314 A. 2d 710. It thought that whether a speedy trial had been denied or whether an accused will be twice put in jeopardy will usually turn on the facts and circumstances present in the particular case. Thus, it concluded, the determination of the question by the trial court would seem to involve an application of judicial discretion as to the functioning of the right squarely under the qualification of the corollary as recognized in *Pearlman* and *Lee*. *Neal*, 20 Md. App. at 29-30. It declared that it would "follow the rule of *Pearlman* and *Lee* except in those cases where the trial judge concludes that the constitutional right exists and is applicable but nevertheless refuses to apply it." It stated that "[t]o the extent that this is a departure from our cases heretofore decided, we depart from them." *Id.* at 30.

*Neal* concerned double jeopardy. The Court of Appeals reviewed the decision on grant of a writ of certiorari. *Neal v. State,* 272 Md. 323, 322 A. 2d 887 (1974). We did not "share the view that a determination that double jeopardy does or does not exist involves an exercise of discretion. To us, the defense of double jeopardy is a liminal constitutional issue, raised at the outset, before there is a trial." *Id.* at 326. We concluded that a motion to dismiss which was based upon double jeopardy was immediately appealable upon its denial.

The Court of Special Appeals considered our decision in *Neal* in its *Taylor v. State,* 22 Md. App. 370, 323 A. 2d 648 (1974), decided ten days later. It said:

"It is clear that the opinion of the Court of Appeals in *Neal* is directed solely to the question of the immediate appealability of a denial of a motion to

---

7. *See* Williams and Burchett v. State, 17 Md. App. 110, 299 A. 2d 878, *cert. denied,* 268 Md. 746, 755 (1973); Edwards and Conner v. State, 16 Md. App. 255, 295 A. 2d 811 (1972); Smith v. State, 11 Md. App. 631, 276 A. 2d 228 (1971); Westmoreland v. State, 8 Md. App. 482, 261 A. 2d 35 (1970); Harris v. State, 6 Md. App. 7, 249 A. 2d 723, *cert. denied,* 255 Md. 741 (1969); Greathouse v. State, 5 Md. App. 675, 249 A. 2d 207, *cert. denied,* 253 Md. 734 (1969); Montgomery v. State, 4 Md. App. 473, 243 A. 2d 620, *cert. denied,* 251 Md. 751 (1968), *cert. denied,* 395 U. S. 948 (1969); Stevenson v. State, 4 Md. App. 1, 241 A. 2d 174, *cert. denied,* 251 Md. 747, 752 (1968); Osborne v. State, 3 Md. App. 161, 238 A. 2d 145, *cert. denied,* 250 Md. 732 (1968); Brown v. State, 2 Md. App. 388, 234 A. 2d 788 (1967).

dismiss that is grounded on double jeopardy. The Court did not address itself to the question of whether a motion to dismiss for lack of a speedy trial was immediately appealable.

"The express message of the Court of Appeals in *Neal* is unmistakable. A denial of a motion to dismiss an indictment on the ground of double jeopardy is appealable immediately. The underlying message of *Neal* is equally unmistakable, *i.e.,* our decision in *Neal v. State* with respect to the holding that a denial of a motion to dismiss for lack of speedy trial is interlocutory and thus not immediately appealable is still viable." *Id.* 22 Md. App. at 372-373.

It made its position plain:

"In order to avoid any possible confusion as to whether an immediate appeal lies from a motion to dismiss for lack of a speedy trial we flatly hold that a denial of such a motion is interlocutory and consequently not immediately appealable, subject, however, to the exception stated in *Neal v. State,* 20 Md. App. at 30." *Id.* 22 Md. App. at 374.

The Court of Special Appeals followed *Taylor* in *Brady v. State,* 36 Md. App. 283, 286-289, 374 A. 2d 613 (1977).

We were not afforded the opportunity to review the judgment of the Court of Special Appeals in either *Taylor* or *Brady,* there being no petition filed for the issuance of a writ of certiorari. We made our position known, however, in *Erbe v. State,* 276 Md. 541, 350 A. 2d 640 (1976), which concerned the denial of a motion to dismiss in which the defendant alleged that there was lack of speedy sentencing. In the face of the defendant's suggestion that he could not appeal until sentenced, we observed:

"However, it is plain under Jones v. State, 241 Md. 599, 600-01, 217 A. 2d 367 (1966), and Harris v. State, 194 Md. 288, 294, 71 A. 2d 36 (1950), that denial of a speedy trial is a final judgment from which the right of immediate appeal exists." *Id.* at 553 n. 1.

We completely agree with the Court of Special Appeals that our express message in *Neal* is unmistakably that a denial of a motion to dismiss an indictment on the ground of double jeopardy is appealable immediately. This, as *MacDonald* makes manifest, is consistent with the decisions of the Supreme Court. But, as the Court of Special Appeals noticed, in our *Neal* we did not address the question of whether a motion to dismiss for lack of a speedy trial was immediately appealable. We did not do so because the question was not presented by the *Neal* appeals, and we saw no need to discuss it by way of *obiter dictum,* especially in the light of *Harris* and *Jones.* We thought that the proper time to decide whether the holdings of those cases were to be reconsidered was when the question was squarely before us. The case *sub judice* places the question squarely before us. We now reconsider the holdings of *Harris* and *Jones,* and we do so in the light of *MacDonald.*

## V

In *Harris* we declared the Sixth Amendment to the United States Constitution and Article 21 of the Declaration of Rights of the Maryland Constitution to be self-executing. 194 Md. at 295. In *Smith v. State,* 276 Md. 521, 526-527, 350 A. 2d 628 (1976), we discussed the interplay between the two constitutional provisions. We concluded "that the opinions of the Supreme Court interpreting the Sixth Amendment right to a speedy trial are 'very persuasive, although not necessarily controlling,' as to the proper construction of Maryland's parallel Article 21 right." *Id.* at 527. In *Erbe,* 276 Md. at 545-546, however, we pointed out that "[t]he language used in Art. 21 of our Declaration of Rights relative to speedy trial is virtually identical with that in the Sixth Amendment to the Constitution of the United States." We see no difference between the two rights with respect to the issue before us.[8] Therefore, as we did in *Erbe,* we shall, for pur-

---

8. Whether there is a difference between the two rights as to the demand for a speedy trial has not yet been decided. In Smith v. State, 276 Md. 521, 527 n. 2, 350 A. 2d 628 (1976) we observed:

"This Court, in cases decided prior to the United States Supreme Court's rejection of the demand-waiver doctrine in Barker v. Wingo,

pose of decision, regard the Supreme Court's "discussion of the Sixth Amendment right to a speedy trial as equally applicable to the right provided in Declaration of Rights, Art. 21." *Id.* at 546.

Furthermore, we see no substantive difference between the Maryland statute and the federal statute granting appellate jurisdiction. The purpose of Maryland Code (1974) § 12-301 of the Courts and Judicial Proceedings Article, like that of 28 U.S.C. § 1291, is to prohibit piecemeal disposition of litigation. *Warren v. State,* 281 Md. 179, 183, 377 A. 2d 1169 (1977). Both statutes patently embody the traditional and basic principle of finality of judgment as a predicate to appellate jurisdiction.

Also, we have recognized and applied the final judgment rule's "collateral order" exception articulated in *Cohen v. Beneficial Industrial Loan Corp., supra. Jolley v. State,* 282 Md. 353, 384 A. 2d 91 (1978).

In light of all of this, we think that the reasons and rationale of *MacDonald,* leading to the conclusion that a defendant in a federal criminal prosecution may not, before trial, appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial, apply equally to lead to the conclusion that a defendant in a criminal proceeding by the State of Maryland may not, before trial, appeal a circuit court's order denying his motion to dismiss because of an alleged violation of either his Sixth Amendment or Art. 21 right to a speedy trial. Our holding in *Harris,* and followed in *Jones,* was reached by applying the corollary to the

---

407 U. S. 514, 523-28, 92 S. Ct. 2182, 2188-91. 33 L.Ed.2d 101 (1972), held that an accused waives his Maryland Article 21 right unless he affirmatively demands a speedy trial. *See, e.g.,* State v. Murdock, 235 Md. 116, 123, 200 A. 2d 666, cert. denied, 379 U. S. 914 (1964); Harris v. State, 194 Md. 288, 297, 71 A. 2d 36 (1950)."

*See also* Swift v. State, 224 Md. 300, 305, 167 A. 2d 762 (1961). In neither *Smith* nor Erbe v. State, 276 Md. 541, 546, 350 A. 2d 640 (1976), was it necessary for us to decide whether the concepts expressed in *Murdock, Swift* and *Harris* remain viable. And we did not reach that point in Jones v. State, 279 Md. 1, 367 A. 2d 1 (1976), *cert. denied,* 431 U. S. 915 (1977) or Wilson v. State, 281 Md. 640, 382 A. 2d 1053 (1978).

finality of judgment rule, namely that the order denying the motion to dismiss on speedy trial grounds, although apparently interlocutory, was final because it denied an absolute constitutional right. We are now persuaded otherwise by *MacDonald.* We now believe, for the reasons set out in *MacDonald,* that a pretrial order of a circuit court denying a defendant's motion to dismiss on speedy trial grounds, unlike a pretrial order denying a motion to dismiss on double jeopardy grounds, is interlocutory and does not fall within the corollary to the general rule that only final judgments are appealable. We expressly overrule *Harris* and our decisions it spawned. We hold that the order denying the motion to dismiss was not a final order and was not subject to an appeal before trial. It follows, therefore, that the appeal to the Court of Special Appeals, which is before us upon our grant of a writ of certiorari, was not allowed by law, and we dismiss it. Maryland Rule 835 a 1.

## VI

As we have indicated, when Stewart's motion to dismiss was denied before trial, he immediately filed an appeal therefrom in open court. The judge said:

"That will be denied. I understand that is an interlocutory order and we will proceed to trial. The remedy for the defendant is preserved because if he is convicted he can raise the issue on appeal not only of the conviction or any error that may have resulted in that conviction during the trial, but also the denial of the motion for lack of speedy trial." [9]

Trial on the offenses charged in the indictment went forward, and Stewart was found guilty by a jury of robbery

9. The judge was of the same mind after hearing further from defense counsel on the point. Although he found defense counsel's argument "very persuasive," he still denied the "right to appeal." He expressed the hope, however, that "the appellate court on the appropriate occasion will spell out exactly what they mean in that area because I think we are all agreed we are not quite sure what they mean."

The judge indicated that the matter of an immediate appeal had also been discussed in his chambers with defense counsel and the Assistant State's Attorney. If the discussion was recorded, a transcription of it does not appear in the record before us.

with a deadly weapon (1st count) and the use of a handgun in the commission of a crime of violence (10th count).[10]

We have said that the general rule is that the perfecting of an appeal brings the subject matter thereof within the exclusive jurisdiction of the appellate court and suspends the authority of the trial court over it during the pendency of the appeal; that the trial court lacks jurisdiction to take any further action in the case with respect to the subject matter of, or affecting, the proceeding until the receipt of the mandate of the appellate court after the appeal has been heard and decided. *Vancherie v. Siperly,* 243 Md. 366, 375, 221 A. 2d 356 (1966); *State v. Jacobs,* 242 Md. 538, 540-541, 219 A. 2d 836 (1966); *Gilliam v. Moog Industries,* 239 Md. 107, 112-113, 210 A. 2d 390 (1965); *Bullock v. Director,* 231 Md. 629, 633, 190 A. 2d 789 (1963). But this general rule does not divest the trial court of jurisdiction to proceed with the trial of the case upon the filing of an order for appeal from a nonappealable, interlocutory pretrial order. Our decisions stating and applying the general rule in no way indicate that the trial court automatically loses jurisdiction to proceed with the trial of an accused simply upon the filing of an appeal from a pretrial ruling of the court, which, as here, was not immediately reviewable on appeal as constituting a final judgment. *See Raimondi v. State,* 8 Md. App. 468, 475-476, 261 A. 2d 40, *cert. denied,* 256 Md. 747 (1970). To hold otherwise would be to sanction that which *Lee,* 161 Md. at 434, deemed so odious — the stopping of criminal trials by filing appeals from interlocutory orders. "And this would add just so much to the resources of those who might find vexatious delays advantageous, and would multiply appeals in criminal cases, often when acquittals, in the end, would render them profitless." *Ibid.* Chief Judge Murphy, now Chief Judge of this Court, speaking for a unanimous Court of Special Appeals, put it aptly in *Raimondi v. State, supra:*

"If the accused in a criminal case could deprive the trial judge of jurisdiction to try and determine his

---

**10.** At the close of all the evidence, a motion for judgment of acquittal was made and denied. A nolle prosequi was then entered as to counts 2 through 9 which charged crimes related to the armed robbery.

case by taking an appeal from a nonappealable interlocutory order, then he would be vested with the power to 'paralyze the administration of justice in the [courts] by the simple expedient of doing what the law does not allow him to do, *i.e.,* taking an appeal from an order which is not appealable.' " *Id.* at 476 (quoting *Veazey v. Durham,* 231 N. C. 357, 364, 57 S.E.2d 377 (1950)).

We conclude that the trial court did not err in proceeding with the trial of the case.

There is another twist, however. After Stewart had been convicted by the jury, the judge deferred the imposition of sentence until 7 June 1977, pending the receipt of a pre-sentence report. On 9 May 1977 Stewart filed a motion for a new trial. According to the docket entries this motion was heard in open court on 7 June, the day set for sentencing. The record submitted to us does not include a transcript of the proceedings, but the docket entries reflect what occurred. It is manifest that the trial judge had changed his view regarding the right of a defendant to appeal immediately from a denial of a motion to dismiss an indictment when the motion is based upon the right to a speedy trial. The judge did not rule on the motion for a new trial, and he did not impose sentences on the verdicts of conviction. The docket entry reads: "Further Proceedings stayed pending appeals." [11] Thus, there was no final judgment on the merits of the criminal cause because sentence had not been imposed. *Buckner v. State,* 11 Md. App. 55, 58-60, 272 A. 2d 828 (1971), *cert. denied,* 261 Md. 723 (1971); *Sands v. State,* 9 Md. App. 71, 79, 262 A. 2d 583 (1970). *See State v. Harman,* 199 Md. 209, 212, 86 A. 2d 397 (1952); *Lamb v. State,* 66 Md. 285, 289, 7 A. 399 (1886). *See also State v. Rappaport,* 211 Md. 523, 529, 128 A. 2d 270 (1957) and *Symington III v. State,* 133 Md. 452, 454, 105 A. 541 (1919) each of which cite *Fleet v. State,* 73 Md.

---

11. According to the docket entries of 7 June 1977 the trial judge also reinstated the bond of $5,000 and directed: "Order for Appeal filed May 4, 1977 to be filed as of June 7, 1977." Both the notice of appeal and the docket show that this was done, the docket entry reading: "Notice of appeal filed in open court on May 4, 1977 Refiled." Apparently, the direction with regard to the order of appeal was to assure that there were no procedural infirmities. *See* Maryland Rules 1011 and 1012.

(unreported), 21 A. 367 (1891), which held that a finding of guilt in a criminal case without imposition of sentence was not a final judgment upon which to base an appeal.[12]

By our dismissal of the appeal, the case will return to the trial court. Inasmuch as Stewart has been duly tried and convicted, a final, appealable judgment will result with the imposition of sentence. On receipt of the case, the trial court should rule on the motion for a new trial. If the motion is denied, it should impose sentence. Upon a timely appeal from the judgment thus obtained, as the trial judge originally observed, the denial of the motion to dismiss on speedy trial grounds will be subject to appellate review. Maryland Rules 887 and 1087.

*Appeal dismissed; costs to be paid by the appellant.*

---

12. Courts and Judicial Proceedings Article of the Maryland Code (1974) § 12-301 expressly permits a defendant in a criminal case to "appeal even though imposition or execution of sentence has been suspended." There was no suspension of the imposition of sentence here within the contemplation of § 12-301. *See* Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 641A.