HARRIS *v.* STATE

[No. 69, October Term, 1949.]

*Decided January 12, 1950.*

*Rehearing denied February 14, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph Kadans* for the appellant.

*Harrison L. Winter, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *A. Gwynn Bowie, State's Attorney for Prince George's County,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Ronald Harris was jointly indicted with two other men by the grand jury for Prince George's County on April 12, 1944. The indictment consisted of five counts, the first of which charged robbery. At the time this indictment was returned against him he was confined in the Maryland Penitentiary, and still is confined in that institution under process of a court of this State. On May 1, 1944, the case was stetted. On December 29, 1947, Mr. Bowie, the State's Attorney for Prince George's County, wrote as follows:

"Your letter of December 18, 1947, addressed to Honorable William C. Coleman has been forwarded to me by Mr. Bernard J. Flynn, U. S. Attorney, for reply.

"With respect to your statements that various letters addressed by you to officials of Prince George's County have been ignored, I can only say that insofar as this office is concerned we have no record of having received any communication from you.

"In reply to your request for information concerning trial of the case pending against you in this jurisdiction, you are advised that in cases in which the defendants are already confined it has not been the practice in this County to bring the cases up for trial until the defendants are returned here. When you are returned to this jurisdiction your case will be promptly disposed of."

On February 17, 1949, Mr. Bowie wrote Harris:

"In reply to your letter to me of February 15th, you are advised that a necessary witness for the State in the case pending against you here is not available at this time and, for this reason, I am unable to comply with your request that the case be brought to trial now."

Subsequently Harris petitioned the Honorable John T. Tucker, a member of the Supreme Bench of Baltimore

City, and on March 4, 1949, Judge Tucker wrote him that he had no jurisdiction in the matter and suggested that he send the petition to one of the judges of the Seventh Judicial Circuit, which comprises Prince George's County, and gave him the names and addresses of the judges of that Circuit.

On April 29, 1949, the petition which Harris sent to Judge Tucker was filed in the Circuit Court for Prince George's County, and on the same day Judge John B. Gray, Jr., filed an order in the case in which he directed the State's Attorney "to make inquiry as to the whereabouts of the prosecuting witness, when he will be available for trial, and communicate his findings to the Court so that the case may be brought to trial as expeditiously thereafter as is practical". It is stated in the order: "The Court has inquired of the State's Attorney concerning the feasibility of promptly trying the above entitled cause. We are informed that Calvin Brady, the supposed victim of the alleged robbery, is now in the armed service of the United States, not available to testify at this time, and that his testimony is essential at the trial of this case. * * * Inasmuch as this application has been made some five years after the indictment it is only proper that the State's Attorney be afforded a reasonable opportunity to procure the attendance of the necessary witnesses."

The State's Attorney found the prosecuting witness and the case was assigned for trial on July 5, 1949. The warden of the penitentiary, in pursuance of a writ of habeas corpus *ad testificandum*, produced Harris in court that day. On that day the prisoner, through his counsel, filed a motion to quash the indictment, which was overruled. On application of counsel for the prisoner the case was continued to August 5th, 1949, at 10 A. M., and on July 18, 1949, an appeal was taken from the order of Judge Charles C. Marbury overruling the motion to quash to this court. It further appears that Judge Charles C. Marbury passed an order on the 14th day of March, 1949, in which the State's Attorney was required to

show cause on or before the 24th day of March, 1949, why Harris should not be granted an immediate trial.

On the 16th day of March, 1949, Harris filed a writ of mandamus in the United States District Court for the District of Maryland to require the State's Attorney to order immediate trial of the case herein involved, and on the 17th day of March, Judge Charles C. Marbury passed an order staying the proceedings in this case until after the petition for a writ of mandamus filed in the United States District Court was determined. The proceedings in the United States District Court were dismissed and an appeal taken, which was subsequently abandoned.

While it is stated by the prisoner and his attorney that communciations were sent to the officials of Prince George's County demanding a prompt trial under the indictment returned in April, 1944, there is nothing in the record to show that any such demands were made. The only two letters in the record are those written by the State's Attorney to Harris, referred to. The record of the proceedings before Judge Charles C. Marbury on July 5, 1949, contains no testimony. There were no witnesses sworn. It consists of a general discussion between the Judge, Mr. Kadans, counsel for the prisoner, and the Assistant State's Attorney. The letter written on May 27, 1949, to Judge Charles C. Marbury by Mr. Kadans is intended to be a legal argument, and Judge Charles C. Marbury's letter of June 1, 1949, to Mr. Kadans sets out what actually had been done in the case as of that date. These letters are in the record. The motion to quash is as follows:

"Now comes Ronald Harris, by Joseph Kadans, his Attorney and moves that the criminal indictment now pending against Ronald Harris be quashed and dismissed for the following reasons:

1. The defendant, Ronald Harris, has not been sufficiently informed of the charges pending against him. He has never been furnished with a copy of the indictment, nor has the indictment ever been read to him.

2. Prosecution at this time is barred. The Constitution of Maryland provides for a prompt and speedy trial. The defendant was indicted at the April 1944 term of the Grand Jury of Prince George's County. The whereabouts of the defendant were known to the State's Attorney for Prince George's County for several years; nevertheless, although the authorities could easily have done so, the prosecution was not activated until June of 1949, after considerable effort was made by the defendant to have the matter disposed of. Trial at this late date would be contrary to the Maryland law and the 14th Amendment to the United States Constitution.

3. An important witness needed by the defendant is now deceased. William Harris, brother of the defendant, who was familiar with the whereabouts of the defendant at the time of the alleged crime, died April 10, 1948. Other important witnesses needed to establish the alibi of the defendant have now moved and cannot be located."

The State filed a motion to dismiss the appeal, contending that the appeal was not taken from a final judgment. While it is perfectly true that an appeal will not lie from a judgment that is not final (*State v. Haas,* 188 Md. 63, 51 A. 2d 647), and ordinarily denial of a "motion to quash" is not a final judgment, on the other hand it is just as true that when a prisoner claims that he has been denied a speedy trial and has thereby become entitled to be freed of further proceedings in a case, and his claim is decided against him, this is a final ruling denying his claimed right, from which an appeal will lie. This appeal may be compared to the sustaining of a demurrer to an indictment, which is a final ruling. The State can appeal, and if the judgment is reversed the case will be remanded for further proceedings. *State v. Archer,* 73 Md. 44, 20 A. 172.

Counsel for appellant seems to think that the Sixth Amendment to the Constitution of the United States has application to the case at bar. That amendment, among other things, provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * *."

Article 21 of the Maryland Declaration of Rights provides, among other things, that a man has a right "to a speedy trial by an impartial jury, * * *."

There was never a doubt, from the time of the adoption of the first ten amendments to the Constitution of the United States until the adoption of the Fourteenth Amendment, that the first eight amendments applied to and limited the powers of the Federal government, but were not applicable to the States. When the Fourteenth Amendment to the Constitution of the United States was passed, the first section thereof, among other things, provided: "nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *." Since the adoption of that amendment, it has been held that cases involving a violation of a basic or fundamental right will be protected under the due process clause of the Fourteenth Amendment; but such protection is only accorded a person where a basic or fundamental right has been violated. Criminal proceedings arising in a State court, involving such rights, flow through the due process clause of the Fourteenth Amendment, become absorbed in federal process, and will be reviewed by the Supreme Court. *Palko v. State of Connecticut*, 302 U. S. 319-329, 58 S. Ct. 149, 82 L. Ed. 288; *Wolf v. People of State of Colorado*, 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359; *Raine v. State*, 143 Tenn. 168, 226 S. W. 189; 22 C. J. S., Criminal Law, § 467.

We think, under the facts in this case, the Sixth Amendment has no application; nor do we think that Article 21 of the Maryland Declaration of Rights applies. The Federal government has not implemented the Sixth Amendment by statute, and neither has this State passed a statute under the 21st Article of the Maryland Declaration of Rights, but, nevertheless, each is self-executing.

*State v. Schnell,* 107 Mont. 579, 88 P. 2d 19, 121 A. L. R. 1082; *People v. Foster,* 261 Mich. 247, 246 N. W. 60.

Many of the States having similar constitutional provisions have statutes which provide a time limit in which a prisoner must be tried. The time limit varies in different States. The general rule is that "a sovereign may not deny an accused person a speedy trial even though he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentence in a court of that sovereign." *118 A. L. R. 1037; 22 C. J. S. supra.*

This rule is followed in a majority of the States and in the Federal courts. See what is said to be a minority rule, 118 A. L. R. 1044. It has been said that there is a distinction between the mandate of a statute and the provision of a constitution. In *State v. Miller,* 72 Wash. 154, 129 P. 1100-1103, it is stated:

"The one is a statutory mandate; the other a constitutional privilege. The statute imposes upon the state the duty to bring the accused to trial within the 60 days. The state must take the initial action. The Constitution accords a right to the accused to a speedy public trial. If he does not demand it, he should not complain. Such is the rule under statutes not mandatory. 'A demand for a trial, a resistance to a postponement, or some other effort to secure a speedy trial must be shown to entitle the accused to a discharge under the statute by reason of the delay of the prosecution.' 12 Cyc. 500. That a constitutional right may be waived by the accused has been repeatedly held by this court. (Authorities cited.) This court has also held that even the mandatory statutory provision is waived by a failure to ask for a dismissal until just before trial." (Authorities cited.) *Harris v. Ogden,* 44 Okl. Cr. 418, 281 P. 316; *Ex parte Van Garner,* 134 Kan. 410, 5 P. 2d 821; *Raine v. State, supra; State v. McTague,* 173 Minn. 153, 216 N. W. 787; *People v. Foster, supra;* 129 A. L. R. 587; *State v. Schnell, supra.*

The case quoted from and the cases cited are supported by the weight of authority in this country, and we adopt the rule that in a case like the one before us it is the duty of the incarcerated person to demand a speedy trial of an indictment pending against him in any of the courts of this State, and if he fails to demand such a trial he waives his right to a speedy trial. This right is a personal right; and it is intended by the Declaration of Rights of this State to protect a prisoner against long delay in the trial of a crime charged against him,—but he must demand a speedy trial.

As was said in *State v. McTague, supra* [173 Minn. 153, 216 N. W. 788]:

"* * * We hold that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. * * * There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal. The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. * * *"

The law, supported by the weight of State authority throughout the country, is the same that applies in Federal cases.

"Delays which have been caused by the accused himself can not, of course, be complained of by him. The right of the accused to a discharge for failure of the prosecution to give him a speedy trial is a personal one to him and may be waived. He must assert the right if he wishes its protection and if he does not make a demand for trial or resist a continuance of the case, or if he goes to trial without objection that the time limit has passed, or fails to make some kind of effort to secure

a speedy trial, he will not ordinarily be in position to demand dismissal because of delay in prosecution, * * *." (See authorities cited.) *Shepherd v. United States,* 8 Cir., 163 F. 2d 974-976.

"In the absence of an affirmative request or demand for trial made to the court it must be presumed that appellant acquiesced in the delay and therefore cannot complain." (Authorities cited.)

*Pietch v. United States,* 10 Cir., 110 F. 2d 817-819, 129 A. L. R. 563, *certiorari* denied 310 U. S. 648, 60 S. Ct. 1100, 84 L. Ed. 1414; see: *Daniels v. United States,* 9 Cir., 17 F. (2d) 339-343, 334; *O'Brien v. United States,* 7 Cir., 25 F. (2d) 90-92; *Poffenbarger v. United States,* 8 Cir., 20 F. 2d 42-45.

Notwithstanding the appellant was confined in the Maryland Penitentiary under process from a Maryland court, he could have applied to a judge of the Circuit Court for Prince George's County for a speedy trial. He did not do so for nearly five years after he was indicted. When he did apply to that court the court ordered the State's Attorney to make every effort to locate the prosecuting witness. This was done and his case assigned for trial on July 5, 1949. On that date the motion to quash the indictment was filed and overruled by the court, and on application of counsel for the accused the case was continued until the 5th of August, 1949. Delay in the case was caused by the proceedings filed in the Federal court, of which the appellant cannot complain. It has been said and reiterated by counsel that repeated applications were made by the appellant to the Prince George's County authorities for a trial. The only letters in the record are the two written by the State's Attorney, to which we have referred. There is an intimation that a request for trial was made, in the letter written to appellant by Mr. Bowie on February 17, 1949, and since that date all reasonable efforts have been made to have the case promptly tried. With this exception, there is nothing in these letters to show that the appellant asked or sought an immediate trial. While

the State's Attorneys usually prepare criminal dockets, and assign dates for trial of cases, yet the judge can always take control and order a case assigned for trial. If the prisoner desired a speedy trial, application should have been made to the court, which had full power to grant relief. When application was made to Judge Gray and Judge Charles C. Marbury action was taken to give the accused a prompt trial.

The converse of this case is *Rigor v. State*, 101 Md. 465, 61 A. 631, 634, 4 Ann. Cas. 719, where Chief Judge McSherry said:

"The penitentiary is not a place of sanctuary, and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt." See *Ponzi v. Fessenden*, 258 U. S. 254, 255, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879.

Under the facts of this case we think there has been no denial to the appellant of a right to a speedy trial. The order of the court overruling the motion to quash the indictment is affirmed.

*Order affirmed, with costs, case remanded for further proceedings.*