JAMES IVORY LAWRENCE *v.* STATE OF MARYLAND

[No. 70, September Term, 1982.]

*Decided March 24, 1983.*

558

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. MURPHY, C. J., and COLE J., concur in the result.

The sole question presented here is whether, in this criminal case, the trial judge erred in overruling an accused's objection to the prosecutor's use of peremptory challenges to exclude individuals from the jury allegedly on the basis of race.

Because the record before us does not show any evidence that the excluded individuals were so excluded solely because of their race, we perceive no error and shall affirm.

James Ivory Lawrence was charged with murder and related offenses. In a jury trial in the Circuit Court for Baltimore County, he was found guilty of first degree murder and use of a handgun in the commission of a crime of violence, for which he received a life sentence plus a concurrent term of fifteen years. Upon appeal to the Court of Special Appeals, the judgments were affirmed, *Lawrence v. State,* 51 Md. App.

575, 444 A.2d 478 (1982). We granted certiorari to consider an issue of public interest.

In light of the limited question before us, it is unnecessary to recite the underlying facts giving rise to the charges against Lawrence. What does give rise to the question for our consideration is shown by the following portion of the record made during the jury selection process after it became apparent that the State had peremptorily struck the three potential jurors who were black:[1]

> "MR. TURNBULL [Defense counsel]: At this point I would point out the fact we have three black jurors, but they were all stricken by the State, and we would ask the Court to — indicate to the Court that under that situation obviously it prejudices the Defendant, and the fact that I object to that."

The trial judge overruled the objection without comment.

The thrust of Lawrence's argument is that "the strictures against racially biased conduct in juror and grand juror selection have been applied with increasing strictness while the reasons given in *Swain* [*v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)] for not granting relief have been eroded." He further contends that we should attach greater significance to more recent State court opinions in interpreting provisions similar to Articles 21 and 24 of the Maryland Declaration of Rights "than a dubious nineteen year old federal precedent."

Patently, what we are concerned with here is the right to equal protection and the right to a trial by an impartial jury as guaranteed by the fourteenth and sixth amendments of the United States Constitution, as well as Articles 21[2] and

---

1. Lawrence and the victim also were black.
2. Art. 21 provides:
   "That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the

24[3] of the Maryland Declaration of Rights. Judge Digges, writing for the Court in *Attorney General v. Waldron,* 289 Md. 683, 704-05, 426 A.2d 929, 940-41 (1981), stated in part:

"It is the fourteenth amendment of the United States Constitution which is here involved, where it provides in pertinent part: 'No State shall deny to any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. XIV, § 1. Although the Maryland Constitution contains no express equal protection clause, we deem it settled that this concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights. *Board of Supervisors of Elections v. Goodsell,* 284 Md. 279, 293 n.7, 396 A.2d 1033, 1040 (1979); *Governor v. Exxon Corp.,* 279 Md. 410, 438 n.8, 370 A.2d 1102, 1118 (1977) *aff'd,* 437 U.S. 117 (1978); *Bruce v. Dir., Chesapeake Bay Aff.,* 261 Md. 585, 600, 276 A.2d 200, 208 (1971); *see Detroit Automotive Purchasing Services v. Lee,* 463 F.Supp. 954, 970 (1978). It is, perhaps, because this State has no express equal protection clause that Article 24 has been interpreted to apply 'in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution,' *United States Mortgage Co. v. Matthews,* 167 Md. 383, 395, 173 A. 903, 909 (1934), *rev'd on other grounds,* 293 U.S. 232 (1934); *see Detroit Automotive Purchasing Services v. Lee, supra,* so that 'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.' *Bureau of Mines of George's Creek,* 272 Md. 143, 156, 321 A.2d 748, 755

---

witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

3. Art. 24 provides:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

(1974). While it is true, as our later discussion will show, that the equal protection guaranties of Article 24 and the fourteenth amendment are independent, capable of divergent effect, it is apparent that the two are so interwined that they, in essence, form a double helix, each complementing the other. Because the decisions of the United States Supreme Court are not only controlling as to our interpretation and application of the equal protection clause of the fourteenth amendment but also persuasive as we undertake to interpret Article 24, we first examine the currents of the federal analysis prior to determining the impact of these constitutional guaranties in this case." (Footnotes omitted).

The Court went on to say:

"When evaluating an equal protection claim grounded on Article 24, we utilize in large measure the basic analysis provided by the United States Supreme Court in interpreting the like provision contained in the fourteenth amendment. Consequently, when under the auspices of federal equal protection, certain important private interests are vindicated by the High Court through an active scrutiny of legislative classifications, it is not surprising that most of the decisions of this Court reflect the same trend. Although the equal protection clause of the fourteenth amendment and the equal protection principle embodied in Article 24 are 'in pari materia,' and decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent, and a violation of one is not necessarily a violation of the other. *See Minnesota v. Clover Leaf Creamery Company,* [449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)], 49 U.S.L.W. at 4112-13 n.6." 289 Md. at 714, 426 A.2d at 946.

Likewise, in *Stewart v. State,* 282 Md. 557, 570, 386 A.2d 1206, 1213 (1978), Judge Orth stated:

> "In *Harris* [*v. State,* 194 Md. 288, 71 A.2d 36 (1950),] we declared the Sixth Amendment to the United States Constitution and Article 21 of the Declaration of Rights of the Maryland Constitution to be self-executing. 194 Md. at 295. In *Smith v. State,* 276 Md. 521, 526-527, 350 A.2d 628 (1976), we discussed the interplay between the two constitutional provisions. We concluded 'that the opinions of the Supreme Court interpreting the Sixth Amendment right to a speedy trial are "very persuasive, although not necessarily controlling," as to the proper construction of Maryland's parallel Article 21 right.' *Id.* at 527. In *Erbe [v. State],* 276 Md. [541,] at 545-46[, 350 A.2d 640 (1976)], however, we pointed out that '[t]he language used in Art. 21 of our Declaration of Rights relative to speedy trial is virtually identical with that in the Sixth Amendment to the Constitution of the United States.' "

Accordingly, whether we review the matter under the federal amendments and/or the State articles, the decisions of the United States Supreme Court will either control or be persuasive.

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court traced the history of peremptory challenges, observing that although there is no constitutional right to peremptory challenges, "the challenge is 'one of the most important rights secured to the accused [.]' " 380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772 (quoting *Pointer v. United States,* 151 U.S. 396, 408, 38 L.Ed. 208, 214, 14 S.Ct. 410). Writing for the Court, Mr. Justice White stated:

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined

partiality that is less easily designated or demonstrable. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' upon a juror's 'habits and associations,' or upon the feeling that 'the bare question [a juror's] indifference may sometimes provoke a resentment[.]'" It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire,* by both prosecutor and accused [.] This Court has held that the fairness of trial by jury requires no less. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried." 380 U.S. at 220-21, 85 S.Ct. at 836, 13 L.Ed.2d at 772-73 (citations and footnotes omitted).

Moreover, in *Swain,* the Supreme Court made clear that while a Negro defendant is not entitled to a jury containing members of his race, a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violated the equal protection clause. The Court, however, also made clear that *"purposeful discrimination may not be assumed or merely asserted. It must be proven."* 380 U.S. at 205, 85 S.Ct. at 827, 13 L.Ed.2d at 764. (Emphasis supplied; citations omitted). In considering the fact that, in *Swain,* of the eight Negroes on the petit jury venire none actually served, two being exempt

and six being struck by the prosecutor in the juror selection process, the Court said in pertinent part:

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case." 380 U.S. at 222, 85 S.Ct. at 837, 13 L.Ed.2d at 773-74.

Prior to *Swain,* this Court clearly indicated that there had to be evidence that Negroes had been *intentionally* excluded before an attack on the jury from which Negroes had been excluded would be successful. For example, in *Jackson v. State,* 180 Md. 658, 661, 26 A.2d 815, 816 (1942), Judge Sloan stated in part:

"It is not the mere fact that they are [black] and their names omitted from the jury lists that determines the question of prejudice, but *it must appear from some substantial evidence that the manner and practice of selecting jurors shows that [blacks] are intentionally excluded.* When this appears, prejudice is inferred." (Citations omitted; emphasis added).

*See also Adair v. State,* 231 Md. 255, 256, 189 A.2d 618, 619 (1963) (mere absence of Negro jurors does not establish denial of fair and impartial trial); *Giles v. State,* 229 Md. 370,

378, 183 A.2d 359, 362 (1962), *appeal dismissed,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963) (defendant not denied fair and impartial trial where absence of Negroes from jury is not by design).

Although we agree with Lawrence that peremptory challeges may not be exercised to exclude individuals from the jury solely on the basis of race, we are dissuaded by his argument that *Swain* should be abandoned. The Supreme Court cases relied upon by Lawrence merely demonstrate the well established and undisputed principle that grand jury and petit jury selection processes that systematically exclude a well-defined class of citizens are unconstitutional.

For example, in *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), the Supreme Court, for the first time, considered whether a white defendant could challenge discriminatory jury selection on the basis that Negroes were arbitrarily excluded. Answering the affirmative, the Court concluded that if the allegations were true, Peters had been denied due process. Accordingly, the judgment was reversed and remanded for further proceedings.

In *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), a male defendant challenged the Louisiana jury system on the basis that it "systematically excluded [women] from the venire", thereby denying him of his right to a fair and impartial jury. 419 U.S. at 524, 95 S.Ct. at 694-95, 42 L.Ed.2d at 694. The system *automatically* excluded females from jury service unless they filed a written declaration that they wished to serve as jurors. The State stipulated that while 53% of the population eligible for jury service was comprised of females, only 10% of the "jury wheel" were females. The Supreme Court agreed with Taylor that such systematic exclusion of women denied him his right to a jury drawn from a fair cross-section of the community.

The Texas grand jury selection was challenged in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). There, respondent asserted that the "key man" system discriminated against Mexican-Americans

since 79.1% of the population was Mexican-American but over an 11 year period, only 39% of those summoned to serve on the grand jury were Mexican-American. The Court held that respondent had presented a prima facie case of discrimination which was not rebutted by the State, affirming the appellate court's finding of a denial of equal protection.

Similarly, in *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Supreme Court reaffirmed its position that racial discrimination in the selection of grand juries constitutes a denial of equal protection. The Court pointed out that such discrimination is harmful to the accused in that he is indicted by a jury excluding a segment of the community, as well as harmful to the entire judicial system. Nevertheless, the Court found that respondents had failed to prove a prima facie case of discrimination regarding the selection of the grand jury foreman.

Clearly, there is no indication in any of these cases that *Swain* has been repudiated. Moreover, we would point out that the idea of a jury representative of the community existed some 20 years prior to *Swain*[4] and, in our view, does not preclude the use of peremptory challenges. In fact, in *Taylor v. Louisiana, supra,* Mr. Justice White stated in pertinent part:

> "It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but *the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."* 419 U.S. at 538, 95 S.Ct. at 702, 42 L.Ed.2d at 702-03 (citations omitted; emphasis added).

---

4. *See* Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84, 86 (1940), cited with approval in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

The appellant also argues that if the use of peremptory challenges by the prosecutor results in all Negroes being excluded from the jury, a presumption arises that the Negroes were excluded solely because of race. We disagree.

In Maryland, the right to peremptory challenges is specifically provided for by Maryland Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, § 8-301 and Maryland Rule 753,[5] and has been exercised for time immemorial. As long ago as 1881, this Court held the right to be essential and highly esteemed, pointing out that said right had been extended to the State by Chapter 40, Acts of 1872. *See Turpin v. State,* 55 Md. 462, 464 (1881). In *Brice v. State,* 264 Md. 352, 366, 286 A.2d 132, 139 (1972), the Court stated:

> "In short, the right to exercise the peremptory strike is unfettered and may be exercised by either party for any reason or indeed for no reason. Hunch, passing impression, appearance of the prospective juror, or any other consideration may lead to the exercise of the peremptory challenge and no inquiry may be made in regard to why it is exercised."

Lawrence urges us to adopt the approach, being followed in California and Massachusetts, that the community cross-section requirement applies to peremptory challenges as well as the selection of jury pools. *See, e.g., People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979), *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979).[6] On the other hand, we note that other jurisdictions have either declined to follow this approach or

---

**5.** In cases involving death, life imprisonment, or 20 years or more of imprisonment, the defendant is permitted twenty peremptory challenges and the State is permitted ten peremptory challenges. In all other cases, each party is permitted four peremptory challenges.

**6.** For further discussion of *Wheeler* and *Soares,* see Saltzburg & Powers, *Peremptory Challenges and the Clash Between Impartiality and Group Representation,* 41 Md. L. Rev. 337 (1982).

held that the evidence did not support a finding of discrimination. *See, e.g., People v. Lavinder,* 102 Ill.App.3d 662, 430 N.E.2d 243, 247 (1981) (declines to interfere with use of peremptory challenges); *State v. Stewart,* 225 Kan. 410, 591 P.2d 166, 172 (1979) (fact that all Negroes were stricken by use of peremptory challenges not proof of lack of fair trial); *State v. Crespin,* 94 N.M. 486, 612 P.2d 716, 718 (1980) (challenge of the only black juror insufficient to raise the inference of improper use of peremptory challenge); *People v. McCray,* 57 N.Y.2d 542, 443 N.E.2d 915, 457 N.Y.S.2d 441 (1982) (state not required to show justifiable cause for exercising peremptory challenges, even when statistics support allegations such challenges used to remove jurors on basis · of · race); *Com. v. Henderson,* 438 ·A.2d 951, 955 (Pa. 1981) (declines to curtail or disturb the right to peremptory challenges); *State v. Thompson,* 276 S.C. 616, 281 S.E.2d 216, 220 (1981) (appellant failed to show when, how often and under what circumstances particular prosecutor had peremptorily challenged members of particular race; absent such showing, prosecutor may exercise peremptory challenges to eliminate all of accused's race from jury).

In *Wheeler,* the Supreme Court of California held that the use of peremptory challenges to exclude prospective jurors solely because of "group bias" is a denial of the right to trial by a jury representative of a cross-section of the community as guaranteed by the California Constitution. 583 P.2d at 761-62. Furthermore, the Court presumed that peremptory challenges are constitutionally exercised. *Id.* at 762. However, the opposing party may rebut the presumption by making a prima facie case of discrimination by showing the peremptory challenges are being used to strike jurors on the basis of only group bias. *Id.* at 764. The guidelines for making a prima facie case were specifically defined by the Court:

"First, . . . he should make as complete a record of. the circumstances as is feasible. Second, he must establish that the persons excluded are members of

a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." *Id.* (footnote omitted).

In *Wheeler,* during the selection of the jury, after the prosecutor exercised eight peremptory challenges, defense counsel had black prospective jurors acknowledge their race for the record. He subsequently moved for a mistrial on the basis the prosecutor was excluding all blacks from the jury. The trial judge gave the prosecutor the opportunity to respond, but did not require him to do so. The prosecutor declined to explain the basis for exercising his peremptory challenges, and the trial judge denied the motion for mistrial, *Id.* at 753. Applying the three-prong test (quoted above), the Court concluded that the defendants had made a prima facie showing of discrimination and that the trial court erred in not requiring the prosecutor to respond. *Id.* at 766.

In *Soares, supra,* the Supreme Judicial Court of Massachusetts concluded that to allow exclusion of members of "discrete groups" through the exercise of peremptory challenges solely on the basis of bias violates the guarantee to an impartial jury inherent in that State's Declaration of Rights. 387 N.E.2d at 516. The Court's reasoning reflected that of *Wheeler, supra,* as discussed above. The Court presumed peremptory challenges will be properly exercised. However, the presumption may be rebutted by "showing that (1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Id.* at 517. As in *Wheeler,* defendants laid the foundation for their appeal by noting for the record the race of black prospective jurors peremptorily challenged by the prosecutor. Thirteen black jurors were available and

the prosecutor exercised his peremptory challenges to strike twelve of them. One black man was seated and selected by the trial judge to act as foreman of the jury. *Id.* at 508. The appellate court concluded the defendants had made a prima facie showing of impropriety and the trial judge erred in denying the request for a hearing on the matter.

While on the basis of the record we need not decide whether to follow the approach taken by *Wheeler* and *Soares,* we do not hold that there may *never* be a violation of the fourteenth amendment through the prosecutor's use of peremptory challenges. As the Supreme Court stated in *Swain v. Alabama:*

> "We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. *But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted.* If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same

right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify." 380 U.S. at 223-24, 85 S.Ct. at 837-38, 13 L.Ed.2d at 774 (emphasis added; citation omitted).

*Accord Quailes v. State,* 53 Md. App. 35, 452 A.2d 190 (1982); *Com. v. Henderson, supra.*

In the instant case, we hold that the presumption that the prosecutor exercised the use of his peremptory challenges in a constitutional manner had not been overcome. Although the prosecutor exercised his right to peremptorily strike the only three blacks on the venire, whether he did so on the basis of race certainly cannot be gleaned from this record. There may very well have been reasons other than race. We observe from the record that the panel of prospective jurors consisted of persons aged 19 to 70. Their work experience covered a wide range, including blue-collar workers, office workers, school teachers, sales persons, retired persons and housewives. Their educational level ranged from eighth grade to college graduates. We find, on this record, no showing that the strikes were made on the basis of race alone; it was Lawrence's burden to make a record to show such purpose, and this he did not do. Unlike *Wheeler* and *Soares,* defense counsel failed to identify the black prospective jurors by race. Nor did he object each time the prosecutor peremptorily challenged a black prospective juror. After *all* peremptory challenges had been exercised, *both* parties indicated to the trial judge that they were *satisfied with the panel as then selected.* The trial judge then asked counsel to approach the bench to discuss the selection of an alternate juror. At that time, defense counsel pointed out that there were no black jurors seated and thus the defendant was prejudiced. Once the trial judge overruled his objection, defense counsel made no further effort to seek another form of relief from the court, such as moving for a mistrial or asking the prosecutor to explain the basis for his peremptory challenges.

Furthermore, defense counsel made no showing whatsoever to indicate that over a period of time the prosecutor had consistently used his peremptory challenges to prevent blacks from ever serving on a jury thus perverting the purposes of such challenges. There is simply no evidence in the record before us that Lawrence overcame the presumption of the State's proper use of peremptory challenges.

Accordingly, finding no error, we affirm.

*Judgment of Court of Special Appeals affirmed; costs to be paid by the appellant.*

Chief Judge Murphy and Judge Cole concur in the result.